UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

CANDIDO MARTINEZ,

                              **Plaintiff,**

              -against-

**COMMISSIONER OF SOCIAL SECURITY,**

                            **Defendant.**

------------------------------------------------------------------X

**18-CV-00580 (SN)**

**OPINION AND ORDER**

USDC SDNY DOCUMENT ELECTRONICALLY FILED DOC #: ___ DATE FILED: 3/25/2019

**SARAH NETBURN, United States Magistrate Judge:**

      Plaintiff Candido Martinez brings this action on his own behalf, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final determination of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). The Commissioner has moved for judgment on the pleadings to uphold the Commissioner's determination and dismiss the case, and Martinez has not filed an opposition brief. Because substantial evidence supports the administrative law judge's ("ALJ's") findings at each of the sequential evaluation steps, I grant the Commissioner's motion.

## BACKGROUND

      Candido Martinez was born in 1962 in the Dominican Republic. Tr. 51. He came to the United States as a teenager, took bilingual classes from the 6th grade to the 9th grade in the United States, and eventually obtained a GED in Spanish. Id.

      Martinez, who was 54 years old when the ALJ's February 24, 2017 decision was issued (see Tr. 24, 51), has held two jobs in the last decade. From 2007 to 2011, he worked four to five hours a day at a bodega assisting shoppers, deterring shoplifters, and delivering items nearby. Tr.

67. From 2012 through 2014, he handed out flyers at times for a furniture store, at times for a restaurant, immediately outside his employer's place of business. Tr. 67-68. He has not worked since the beginning of 2015. Tr. 54-55.

Martinez has and continues to suffer form a variety of ailments including kidney stones (Tr. 252-53), mild degeneration of the spine (Tr. 553), type II diabetes (Tr. 268), toxoplasmosis (Tr. 441-42), and HIV (id.). The record reflects that his primary source of medical care is through emergency room treatment. As outlined in the Commissioner's statement of the Administrative Record—which the Court adopts—Martinez received medical care at Harlem Hospital Center and New York Presbyterian Hospital during the relevant period.

Martinez applied for DIB benefits on January 24, 2014, alleging disability since November 1, 2013, due to HIV, diabetes, spinal degenerative disease, alcohol abuse, kidney stones, and seizures. See Tr. 152-60, 66, 167-76. His application was initially denied on October 30, 2014. Tr. 77-89. He then appeared at a hearing before the ALJ on January 20, 2016, see Tr. 45-76, and the ALJ issued his unfavorable opinion on February 24, 2017, see Tr. 19-28. The Appeals Council denied Martinez's request for review of that decision on November 30, 2017. See Tr. 1-12. Martinez then filed his appeal before this Court on January 23, 2018. See ECF No. 1.

<b>APPLICABLE LAW</b>

**I.     Definition of Disability**

A claimant is disabled under the Social Security Act if he demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). A claimant will be determined to be disabled only if the "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The Social Security Administration has established a five-step sequential evaluation process for making disability determinations. See 20 C.F.R. § 404.1520. The steps are followed in order: if it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not progress to the next step. The Court of Appeals has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Jasinski v. Barnhart, 341 F.3d 182, 183–84 (2d Cir. 2003) (quoting Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999)). The "claimant bears the burden of proof in the first four steps of the sequential inquiry; the Commissioner bears the burden in the last." Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013).

## II. Standard of Review

A motion for judgment on the pleadings should be granted if it is clear from the pleadings that "the moving party is entitled to judgment as a matter of law." Burns Int'l Sec. Servs., Inc. v. Int'l Union, 47 F.3d 14, 16 (2d Cir. 1995). The court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court may set aside the Commissioner's decision only if "it is based upon legal error or is not supported by substantial evidence." Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998)). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

Martinez has not filed an opposition to the Commissioner's motion for judgment on the pleadings, despite agreeing to a briefing schedule that contemplated his opposition brief. See ECF No. 18. Although courts have automatically granted motions, even in pro se cases, where a party fails to file opposition papers, the Court has undertaken an independent examination of the ALJ's decision to reach its conclusion that the Commissioner is entitled to judgment as a matter of law.

## DISCUSSION

## I. Eligibility under the Listings

The listings—formally the Listings of Impairments—are a set of regulations defining disabilities so severe that they render a claimant *per se* disabled in the eyes of the Social Security Administration. See 20 C.F.R. 404 Subpt. P, App. 1. The ALJ concluded that Martinez did not

meet or exceeded the listing for HIV (listing 14.11). Tr. 22-23. That conclusion was supported by substantial evidence.

To meet listing 14.11, a claimant must have a HIV diagnosis, which Martinez does (see Tr. 268), in addition to one of nine sets of severe symptoms. Martinez's condition, however, is not severe enough to fall under those categories. His treatment notes indicate that his HIV is "well-controlled" Tr. 268; see generally Tr. 266-337, 372-439 (treatment notes from January 1, 2013 through July 7, 2015). He also testified that his CD4 count was well above the listing's criteria just three months before his hearing. Compare 20 C.F.R. 404 Subpt. P, App. 1, § 14.11(F) (classifying a claimant with a CD4 count below 50 cells/mm3 as disabled) and id. § 14.11(G) (classing a claimant with a CD4 count below 200 cells/mm3 as disabled when other symptoms are present) with Tr. 56 (testimony from Martinez that his CD4 count was 760 cells/mm3 three months prior).

The ALJ also considered Martinez's severe impairment of diabetes mellitus. The ALJ explained that the SSA no longer has a listing for endocrine disorders, of which diabetes mellitus falls under, because improvements in medical science have prevented most endocrine disorders from reaching a listings-level severity. Here, the medical record evidence supports the conclusion that Martinez's diabetes is well-managed and does not meaningfully interfere with his daily activities.

In sum, the Court has considered the ALJ's conclusions at step three that Martinez's impairments did not meet or equal the listings and finds them to be supported by substantial evidence and free from legal error.

## II.     Residual Functional Capacity

Regulations divide a person's physical RFC into five exertional categories: sedentary, light, medium, heavy, and very heavy. See 20 C.F.R. § 404.1567. They define each category

according to a person's maximum capacity to walk, sit, and manipulate weight. See id. The ALJ found that Martinez could perform light work—meaning that he could lift or carry up to 20 pounds occasionally and 10 pounds frequently and could sit, stand or walk up to six hours—with some additional limitations. Tr. 23. Based on this conclusion, the ALJ found that Martinez could perform his past relevant work in addition to other work available in significant numbers in the national economy. Tr. 26-27. Because substantial evidence supported these conclusions, the ALJ's ultimate finding is affirmed.

There was ample evidence in the record to support the ALJ's conclusion that Martinez could perform light work. The consultative examiner found that he had "minimal limitation of heavy lifting, squatting, kneeling, crouching, stair climbing, standing for long periods of time, sitting for long periods of time, bending, and performing overhead activities with his hands," Tr. 444, all of which supports a light work RFC finding, see Lewis v. Colvin, 548 F. App'x 675, 677-78 (2d Cir. 2013) (summary order) (affirming ALJ's light work RFC assessment because the consultative examiner assessed "mild limitations for prolonged sitting, standing, and walking"); Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (affirming light work RFC assessment because the consultative examiner found "[m]ild to moderate limitation for sitting for a long time, standing for a long time, walking for a long distance, pushing, pulling, or heavy lifting"). Given that Martinez himself testified that he could lift as much as 15 pounds in each hand, see Tr. 63, the ALJ's light work RFC assessment was adequately supported.

None of the conflicting evidence in the record compelled the ALJ to conclude otherwise. Genuine "conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002). The ALJ did so appropriately here. Martinez may

6

have, for example, testified that he has difficulty walking nine blocks. Tr. 63. But given Martinez's reported activities, the ALJ's decision was still supported. Compare Tr. 442 (consultative examiner notes indicating Martinez groomed himself daily in addition to cooking, cleaning, doing laundry, and shopping once a week) with Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980) (plaintiff's testimony that she could only cook, sew, wash if she could take an afternoon nap and work at a slow pace did not preclude the possibility that she could perform light work). Likewise, the consultative examiner may have reached some conflicting conclusions, indicating in checkbox form that Martinez could stand for only one hour and walk for three hours in a day. See Tr. 446. But the ALJ discounted that checkbox assessment because it was so "internally inconsistent with his examination findings and narrative assessment report," Tr. 25, and that conclusion was entirely appropriate. See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (affirming the ALJ's decision crediting portions of a physician's opinion that was consistent with medical evidence and rejecting inconsistent portions).

The RFC determination was supported by substantial evidence. The hypotheticals posed to the vocational examiner were, therefore, also supported by substantial evidence, and the ALJ properly relied upon the vocational examiner to conclude that Martinez was not disabled at steps four or five. See Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983) (evidence from a vocational expert based on proper hypothetical questions constitutes substantial evidence supporting the ALJ's finding that the claimant was not disabled).

## III.    Ability to Communicate in English

During the hearing, the ALJ recognized that Martinez is very close to "gridding out." See Tr. 74. A claimant "grids out" when his age, education, work experience, and RFC profile are defined as *per se* disabled under the Social Security Administration's regulations. See 20 C.F.R. § 404, subpt. P, app. 2. Martinez's experience is in unskilled work, see Tr. 70-71, and he is

7

"closely approaching advanced age," see Tr. 66. If the ALJ had found that Martinez was limited to sedentary work or was unable to communicate in English, then Martinez would have gridded out. See 20 C.F.R. § 404, subpt. P, app. 2, Rules 201.12, 202.09. Recognizing this, the ALJ carefully assessed whether Martinez could handle light work, see Tr. 74, and, as discussed above, the ALJ's light work RFC assessment was supported with substantial evidence. Whether Martinez can communicate in English was a closer question, but the ALJ's decision was still appropriate. It is affirmed.

There was evidence that Martinez could not communicate in English. He relied on a translator at the hearing, during which he testified that he could only understand English "a little bit." Tr. 48. Some of his social security paperwork was filled out by a third party in English, see Tr. at 185, and some of his medical records indicate that the provider needed a Spanish translator in order to communicate with Martinez, see Tr. 395. All of this is consistent with the fact that he obtained his GED in Spanish after he immigrated to the United States from the Dominican Republic at the age of 16. Tr. 51-52.

There was, however, a substantial amount of evidence suggesting that although Martinez may be Spanish-language dominant, he can nevertheless communicate in English. The consultative examiner reported that Martinez was able to communicate in English by himself, Tr. 441, and a multitude of his medical records indicate that his preferred language was English, see Tr. 340, 342, 347, 370, 380, 420, 559, 561, 564, 568, 572, 574, 575, 578, 580, 585, 588, 590. He testified that he sometimes spoke to his children in English and that he passed the English language component of his citizenship test. Tr. 52. The ALJ noted this evidence in his opinion before he ultimately concluded that Martinez could communicate in at least basic English. Tr. 23-24.

Thus, this was not a case where the ALJ failed to assess the claimant's capacity to communicate in English. Compare, e.g., Torres v. Comm'r of Soc. Sec., No. 14-CV-6438P, 2015 U.S. Dist. LEXIS 123237, at *15-16 (W.D.N.Y. Sep. 15, 2015) (reversing finding that claimant could communicate in English in part because the medical records "overwhelmingly suggest that she is unable to communicate with her medical providers in English"). Instead, the ALJ acknowledged the conflicting evidence before resolving the factual dispute. That is precisely the ALJ's role, and it was done properly here. The decision is, therefore, affirmed.

## CONCLUSION

Accordingly, Defendant's motion for judgment on the pleadings is GRANTED, and the action is DISMISSED with prejudice. The Clerk of Court is respectfully requested to terminate the motion at ECF No. 21.

**SO ORDERED**

_____
SARAH NETBURN
United States Magistrate Judge

DATED: March 25, 2019
New York, New York

cc: Candido Martinez
2075 Wallace Ave.
Apt. 448
Bronx, NY 10462